UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GILLIAN LAMBEY, | Case No.: 2:07-cv-1268-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss or in the Alternative Motion for a More Definite Statement–#7; |
| STATE OF NEVADA, ex rel. Department of Health and Human Services, | Motion to Amend–#11; Motion to Strike–#12) |
| Defendant. | |

Before the Court is Defendant State of Nevada, Department of Health and Human Services' ("DHHS") **Motion to Dismiss or in the Alternative Motion for a More Definite Statement** (#7), filed January 7, 2008. The Court has also considered Plaintiff Gillian Lambey's Opposition (#10), filed May 1, 2008, and Defendant's Reply (#13), filed May 15, 2008.

Also before this Court are Plaintiff's **Motion to Amend** (#11), filed May 1, 2007, and Defendant's **Motion to Strike Plaintiff's Opposition** (#12), filed May 14, 2008. To date, the Parties have filed no Oppositions.

**BACKGROUND**

This action arises from the alleged sexual harassment and defamation of Plaintiff by Defendant's employees, and Defendant's related negligence in the hiring, training, supervision,

and retention of its personnel.  Plaintiff is employed by Defendant as a Group Supervisor at the Summit View Youth Correctional Center where she performs the duties of a correctional officer.  Defendant initially hired Plaintiff as a Group Supervisor I, in May 2005, and promoted her to Group Supervisor II, in June 2006, after a probationary period.

Plaintiff claims that William Jefferson ("Jefferson"), a Group Supervisor IV, sexually harassed her on multiple occasions between April and June of 2006.  To cite a few examples from Plaintiff's Amended Complaint, Plaintiff alleges that Jefferson told her, "I just like touching you," while attempting to rub something off of her pants.  (Dkt. #4, Compl. ¶ 8.)  In another incident, Jefferson purportedly told Plaintiff that he liked the way she looked in her jeans and asked when he could see her outside of work in the same pair of jeans.  Jefferson also told her, "you haven't given me any love today," and asked, "do you still love me?"  (*Id.*)  On yet another occasion, Jefferson allegedly put his hands beneath Plaintiff's jacket and rubbed her back while making moaning sounds.  Although Plaintiff expressed her discomfort, Jefferson later asked Plaintiff, "are you going to be my baby today?"  (*Id.*)  In addition to being harassed by Jefferson, Plaintiff asserts that Eric Jordan ("Jordan"), Assistant Head Group Supervisor, and John Wynn ("Wynn"), Plaintiff's direct supervisor, made inappropriate and suggestive comments to her.

Plaintiff reported these incidents to Larry Clarke ("Clarke"), a Group Supervisor III, on June 9, 2006, even though she should have reported them to the Director, Audry Fetters ("Fetters").  At the time however, Plaintiff allegedly did not know to whom or how to report sexual harassment because she was not trained in sexual harassment reporting, or could not recall any such training.  In response to her complaint, Clarke suggested that Plaintiff meet with the individuals who were allegedly harassing her, namely Jefferson, Jordan, and Wynn, in addition to Clarke and another Group Supervisor III, Mr. Thomas.  When Plaintiff indicated to Clarke that she did not want to attend a meeting comprised of "her and five men," three of which were her purported harassers, Clarke allegedly insisted, "this is your problem, and you need to take care of it or fix it."  (*Id.* ¶ 13.)  As a consequence of Clarke's insistence, Plaintiff felt compelled to attend

AO 72
(Rev. 8/82)

the meeting, which took place on June 16, 2006. During the meeting, Jefferson, Jordan, and Wynn apologized; however, Plaintiff contends that nothing was resolved and that the men treated the alleged misconduct as a joke.

Sometime after the June 16, 2006, meeting, Director Fetters summoned Plaintiff to her office and told Plaintiff that she was upset because the conduct was not reported directly to her. Fetters also informed Plaintiff that if she wanted to drop her sexual harassment complaint, she had until the following Monday to do so. Instead of dropping her complaint, Plaintiff requested and was granted a formal internal investigation (the "Formal Investigation"). In addition to requesting the Formal Investigation, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission on October 31, 2006.

Shortly after the Formal Investigation commenced, Plaintiff's co-workers, who she alleges should not have known about her sexual harassment complaint, questioned her about the investigation, and shunned and mistreated her. For example, Plaintiff alleges that she became the subject of jokes and that her co-workers were afraid to speak around her for fear that "it might be sexual harassment." (*Id*. ¶ 17.)

As a result of her complaint, Plaintiff asserts that Defendant's employees retaliated against her in a number of ways. Specifically, Plaintiff alleges that Defendant's employees subjected her to an unfounded investigation for sexual misconduct with an inmate (the "Inmate Investigation"). According to Plaintiff, the inmate made a written statement wherein he claimed that Defendant's employees threatened him with denial of parole unless he accused Plaintiff of sexual misconduct. Notwithstanding her requests, Defendant's personnel allegedly refused to issue a statement indicating that the inmate's accusation against her was unfounded.

Plaintiff further alleges that Defendant's employees retaliated against her by changing her working conditions. For example, Plaintiff claims that she was subjected to heightened scrutiny and surveillance when she performed her duties. Plaintiff also asserts that she

3

was transferred to work alone with Jefferson, one of her purported harassers. Finally, Defendant's employees allegedly reassigned her to less desirable shifts and locations four times in 2006.

Based on these allegations, Plaintiff brings claims against Defendant for (1) sexual harassment, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2 and 2000e-3; (2) negligent hiring, supervision, and retention; (3) slander; (4) libel; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress.

Defendant moves to dismiss Plaintiff's second, third, and fourth claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), or in the alternative, to require a more definite statement pursuant to Rule 12(e). For the following reasons, the Court (1) denies Defendant's Motion to Dismiss as to Plaintiff's claims for negligent training, supervision, and retention, and slander; (2) dismisses Plaintiff's claims for negligent hiring and libel with leave to amend; and (3) denies Defendant's Motion for a More Definite Statement.

## DISCUSSION

**I. Motion to Strike Plaintiff's Opposition**

Before turning to the Motion to Dismiss, the Court addresses an initial matter. Defendant moves to strike Plaintiff's Opposition on the ground that Plaintiff filed her Opposition over two months late. The Court denies Defendant's Motion to Strike because it finds that Defendant was not prejudiced by the delay.

Additionally, in its Motion to Strike, Defendant requests the Court to seal Plaintiff's initial Complaint because it states the name of a minor inmate. Plaintiff has not opposed this request. Therefore, the Court will seal the Complaint (Dkt. #1) in accordance with Fed. R. Civ. P. 5.2(d) but does not require a public, redacted version to be filed. The Court notes that Plaintiff's Amended Complaint and proposed Second Amended Complaint contain no identifying information of the minor inmate.

/ /

**II. Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion, a court must examine the complaint to determine whether it contains sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiff[]." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). However, a court does not assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

**A. Negligent Hiring, Training, Supervision, and Retention**

Plaintiff's second claim is for negligent hiring, training, supervision, and retention. Under the pleading requirements of Rule 8(a), Plaintiff's complaint need only provide "a short and plain statement" giving Defendant fair notice of the claim and the grounds upon which it rests.

**1. Negligent Hiring**

Nevada employers have a general duty to conduct a background check on any potential employee to ensure that their employees are fit for their positions. *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996). An employer breaches this duty by hiring "an employee even though the employer knew, or should have known, of that employee's dangerous propensities." *Id.* Here, Plaintiff alleges neither that Defendant was negligent in conducting background checks upon any of its employees, nor that Defendant knew or should have known of Jefferson, Jordan, or Wynn's alleged dangerous propensities when they were hired. In fact, Plaintiff fails to mention Defendant's hiring practices anywhere in her Amended Complaint other than a cursory legal conclusion that Defendant was negligent in hiring. The Court is not obligated to assume the truth of this legal conclusion merely because Plaintiff asserts it as a factual allegation. *Warren*, 328 F.3d at 1139. Accordingly, the Court finds that Plaintiff's allegations do not support a negligent

AO 72
(Rev. 8/82)

hiring claim. The Court further finds that Plaintiff's proposed Second Amended Complaint fails to cure this defect. Thus, the Court dismisses Plaintiff's negligent hiring claim.

**2. Negligent Training, Supervision, and Retention**

The elements for negligent training, supervision, and retention include: (1) a general duty on the employer to use reasonable care in the training, supervision, and retention of employees to ensure that they are fit for their positions, (2) breach, (3) injury, and (4) causation. *Hall*, 930 P.2d at 98 (duty and breach); *Jespersen v. Harrah's Operating Co.*, 280 F. Supp. 2d 1189, 1195 (D. Nev. 2002) (injury and causation). Defendant contends that Plaintiff's claim for negligent training, supervision, and retention fails because she has not alleged any actions or inactions demonstrating that Defendant was negligent in the training, supervision, and retention of its employees. The Court disagrees.

In support of her claim, Plaintiff alleges that she does not recall receiving any training regarding to whom or how to report sexual harassment. Moreover, Plaintiff's allegations could support a finding that her supervisors lacked appropriate sexual harassment training. For example, when Plaintiff told Clarke about Jefferson's conduct, he asked her to participate in a meeting attended by five men, three of whom were Plaintiff's alleged harassers. As Plaintiff later learned, Director Fetters was upset that the conduct was not reported directly to her. In addition, Plaintiff asserts that her complaints, expressed at the June 16, 2006 meeting with Clarke and her alleged harassers, went unresolved. Also, the Formal Investigation into Plaintiff's complaints did not remain confidential; instead, Plaintiff's co-workers questioned her about the investigation, and shunned and mistreated her. Finally, notwithstanding their knowledge of Jefferson's alleged sexual misconduct, Plaintiff alleges that her supervisors transferred her to work alone with Jefferson.

The Court finds that the foregoing allegations sufficiently state a claim that Defendant was negligent in ensuring that its employees, including Plaintiff and her supervisors, were adequately trained in the handling of sexual harassment complaints. Accordingly, the Court

1  finds that Plaintiff's Amended Complaint successfully states a claim for negligent training,
2  supervision, and retention.

3  **B. Defamation**

4  Counts three and four, respectively, assert claims for defamation under slander and
5  libel theories. Defamation actions are pled under the requirements of Fed. R. Civ. P. 8(a). *See*
6  *Empress LLC v. City and County of S.F.*, 419 F.3d 1052, 1055 (9th Cir. 2005) ("[N]early all of the
7  circuits have now disapproved any heightened pleading standard in cases other than those
8  governed by Rule 9(b) [fraud and mistake].") (citation and internal quotations omitted). Under
9  Nevada law, the elements for defamation include: (1) a false and defamatory statement, (2)
10  unprivileged publication to a third person, (3) fault, amounting to at least negligence, and (4)
11  actual or presumed damages. *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).

12  **1. Slander**

13  Plaintiff's third claim for is for slander. In addition to the elements for defamation
14  claims, slander requires a showing of special damages unless the defamatory statement is
15  slanderous per se. *Branda v. Sanford*, 637 P.2d 1223, 1225 (Nev. 1981). A statement is
16  slanderous per se if it (1) imputes commission of a crime; (2) injures the plaintiff's trade, business
17  or office; (3) imputes contraction of a loathsome disease; or (4) imputes unchastity in a woman.
18  *Id.*

19  Here, Plaintiff alleges that during the Inmate Investigation, Defendant's personnel
20  falsely accused her of engaging in sexual misconduct with an inmate and that they knew the
21  accusation was false when made. Defendant contends that Plaintiff's slander claim fails because
22  she alleges neither the precise words of the defamatory communication nor the person who spoke
23  them. The Court disagrees. Although Plaintiff has not identified the exact words of the alleged
24  defamatory statements, she has identified their general content, the context in which they were
25  made or caused to be made, and that they were made by one or more of Defendant's employees.
26

AO 72
(Rev. 8/82)

1   Thus, the Court finds that Defendant is put on notice of the nature of the statements sufficient to
2   prepare a responsive pleading. Fed. R. Civ. P. 12(e).
3         Defendant further moves to dismiss on the grounds that statements made during the
4   Inmate Investigation are privileged. *Jordan v. State ex rel. Dep't of Motor Vehicles & Public*
5   *Safety*, 110 P.3d 30, 48 n.56 (Nev. 2005) ("statements made in good faith furtherance of one's
6   official duties are generally privileged."), *abrogated on other grounds by Buzz Stew, LLC v. City*
7   *of N. Las Vegas*, 181 P.3d 670, 673 n.6 (Nev. 2008). Because Plaintiff asserts that Defendant's
8   employees knew the inmate's accusation was false when made, Plaintiff successfully alleges that
9   the Inmate Investigation was not conducted in good faith furtherance of their official duties. Thus,
10  Defendant cannot rely on the official duties privilege to defeat Plaintiff's claims. For the
11  foregoing reasons, the Court declines to dismiss this claim.
12        **2. Libel**
13        Plaintiff's fourth claim is for libel and is based upon the same allegations used to
14  support her claim for slander. Plaintiff asserts that Defendant, through its employees, made
15  written, defamatory statements about her when they accused her of sexual misconduct with an
16  inmate. However, Plaintiff fails to allege the existence of any written defamatory statement about
17  her. In fact, the only written statement mentioned in Plaintiff's Amended Complaint is that of the
18  inmate, wherein he states that he was coerced into making a false accusation against her.
19  Moreover, Plaintiff does not allege that the inmate's written statement makes any defamatory
20  remarks about her. The fact that the inmate may have been coerced into making a false statement,
21  by itself, does not impute any defamatory statement to Plaintiff. Because Plaintiff does not allege
22  the existence of any written defamatory statement, the Court finds that her libel claim fails. The
23  Court further finds that Plaintiff's proposed Second Amended Complaint does not cure this defect.
24  Accordingly, the Court dismisses this claim.
25  / /
26  / /

**III. Motion for a More Definite Statement**

In the alternative to its Motion to Dismiss, Defendant moves for a more definite statement under Fed. R. Civ. P. 12(e).  However, the Court does not find Plaintiff's Amended Complaint "so vague or ambiguous that [Defendant] cannot reasonably prepare a response." *Id.* Therefore, the Court denies Defendant's Motion for a More Definite Statement.

**IV. Motion to Amend**

In response to the instant Motion to Dismiss, Plaintiff moves to amend her Amended Complaint and attaches a proposed Second Amended Complaint.  The Court finds that even if Plaintiff were to file the proposed Second Amended Complaint, as written, it still fails to cure the above-noted deficiencies.  Therefore, the Court denies Plaintiff's Motion to Amend with regard to the proposed Second Amended Complaint.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#7) is DENIED as to Plaintiff's claims for negligent training, supervision, and retention, and slander; and GRANTED with leave to amend as to Plaintiff's claims for negligent hiring and libel.

IT IS FURTHER ORDERED that Defendant's Motion for a More Definite Statement (#7) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend (#11) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (#12) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court SEAL Docket #1, Complaint.

Dated: July 3, 2008.

_____
ROGER L. HUNT
Chief United States District Judge