# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GILLIAN LAMBEY, | Case No.: 2:07-cv-01268-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#38) |
| STATE OF NEVADA, ex rel. Department of Health and Human Services | |
| Defendant. | |

Before the Court is Defendant The State of Nevada, ex rel. Department of Health and Human Services' ("DHHS") **Motion for Summary Judgment** (#38), filed September 23, 2009. The Court has also considered Plaintiff Gillian Lambey's Opposition (#64), filed February 12, 2010, and DHHS' Reply (#65), filed February 22, 2010.

## BACKGROUND

On May 23, 2005, DHHS hired Plaintiff Gillian Lambey as a group supervisor in charge of working with troubled teenagers. Lambey was hired as a probationary employee with the understanding that she could later earn status as a permanent employee. Lambey was first assigned to the Summit View Youth Correctional Center. Within the Correctional Center, Lambey was assigned to the Sierra I cottage under the supervision of John Wynne, another group supervisor.

1

Lambey alleges William Jefferson, a group supervisor at the Evergest II cottage in the Correctional Center, sexually harassed her on multiple occasions. According to Lambey:

(1) Jefferson beckoned her to sit beside him during a team meeting and then reached under the table and started rubbing her legs "in a lascivious manner."

(2) Jefferson attempted to rub something off of her pants and said "I just like touching you."

(3) Jefferson told her he liked the way she looked in jeans and asked when he could see her outside of work with the same pair of jeans on.

(4) Jefferson said on several occasions to the effect of "you haven't given me any love today" and "do you still love me?"

(5) When Jefferson and Lambey were alone, Jefferson gave her a hug, put his hands under Lambey's jacket, and "rubbed her back in a sexual manner and made moaning sounds."

(6) Jefferson told her "I really like you. I'm really attracted to you." He also asked her if they could be "special friends."

(7) Jefferson asked Lambey "are you going to be my baby today?" That same day he asked her to make him some coffee and when she declined to do so, Jefferson said "I guess you answered my question. I guess you won't be my baby today."

Jefferson knew of Lambey's status as a probationary employee. Although he did not directly supervise Lambey, Jefferson's seniority put him in a position to influence future decisions regarding whether to permanently retain her as a DHHS employee.

On June 9, 2006, Lambey informed Larry Clarke, a co-worker, that Jefferson had been sexually harassing her. Clarke apparently informed DHHS of Lambey's allegations because a meeting was held on this matter on June 16. Lambey and Jefferson attended the meeting as did three other men: Eric Jordan (assistant head group supervisor), Melvin Thompson (group supervisor III), and John Wynne (group supervisor IV). DHHS admits the meeting was not held in accordance with the Governor's Policy Against Sexual Harassment and Discrimination, which

apparently requires that meetings regarding allegations of harassment be held in confidence. Lambey alleges she reluctantly attended the meeting and was upset that at the meeting a number of her male co-workers became aware of her allegations against Jefferson.

   Shortly after the meeting, Lambey met with Superintendent Audrey Fetters and gave her a written statement alleging that Jefferson had sexually harassed her.  Fetters subsequently ordered Pamela Hiu, a personnel analyst, to investigate Lambey's assertions.  After talking to eleven DHHS employees, including Jefferson, Hiu concluded that the only allegation Lambey made that could be corroborated by witnesses were her assertions that Jefferson had given her hugs and called her "babe" and "baby."  After reviewing Hiu's findings, DHHS sent a letter to Jefferson informing him that his conduct was unprofessional and inappropriate.  Because DHHS's records indicated this was the first time Jefferson had been involved in any misconduct, DHHS took no further action against him.

   Lambey alleges that after her co-workers found about her allegations against Jefferson, they began to "shun[] and mistreat[] . . . her." (Dkt. #4, Am. Compl. ¶ 17.)  According to Lambey, she became "the butt of jokes and has endured comments that people . . . can't say something around her because 'it might be sexual harassment.'" (*Id.*)

   In March 2007, DHHS moved Lambey, at her request, to the Sierra II cottage pending the outcome of its investigation.  In August, all of the group supervisors , including Lambey, were informed that in September they would all be transferred to new units.  Lambey was scheduled to be moved to the Everest cottage, but after being informed of this change, she apparently requested to move to the graveyard shift on the Sierra II unit where she was already stationed.  DHHS approved this request.

   On October 6, 2007, Lambey filed an Amended Complaint naming DHHS as the lone Defendant.  In the Amended Complaint, Lambey alleges claims for (1) harassment under Title VII; (2) retaliation under Title VII; (3) negligent hiring, supervision, and retention; (4) slander; (5) libel; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional

distress. Following DHHS' partial motion to dismiss, the Court dismissed Lambey's claims for negligent hiring and libel. DHHS now moves for summary judgment on each remaining claim. For the reasons discussed below, the Court grants DHHS' Motion in part and denies it in part.

## DISCUSSION

### I. Legal Standard

A court will grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In evaluating a motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

The movant bears the burden of showing that there are no genuine issues of material fact. *Id.* "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the movant satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

## II. Harassment under Title VII

Lambey alleges Jefferson sexually harassed her in violation of Title VII, which states that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). In order to establish a harassment claim under Title VII, a plaintiff must show that the alleged harassment was so "severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment." *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 270 (2001). Applying this standard, the Supreme Court has held that district courts should "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988).

The Court finds Lambey has brought forth sufficient evidence to indicate that Jefferson may have harassed her. Lambey alleges Jefferson rubbed her leg, her back (underneath her jacket), called her "baby" many times, asked her if the two could be "special friends", and told her he wanted to see her in jeans outside of work. Although Jefferson denies these allegations, witnesses corroborate Lambey's testimony that Jefferson called her "baby" and gave her numerous hugs. This testimony, in addition to the fact that Jefferson was Lambey's indirect supervisor and that DHHS concluded Jefferson's behavior was inappropriate and irresponsible, creates a genuine issue of material fact as to whether DHHS is liable under Title VII. Accordingly, the Court denies DHHS' motion for summary judgment on this claim.

## III. Retaliation under Title VII

Lambey alleges DHHS retaliated against her for reporting Jefferson's alleged misconduct by, first, requiring her to go to a meeting in which her grievances were aired in front of her co-workers and, second, by transferring her from the day shift to the graveyard shift. In order to establish a claim for retaliation, a plaintiff must show (1) she was engaged in protected activity;

1 (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000).

    The Court finds a genuine factual dispute exists regarding whether DHHS retaliated against Lambey. In so ruling, the Court is most persuaded by the fact that DHHS held a meeting in violation of the Governor's Policy Against Sexual Harassment and Discrimination in which it disclosed Lambey's allegations to a number of her co-workers. The Court is aware DHHS claims the meeting could not have been held for a retaliatory purpose because most of Lambey's co-workers first learned of her allegations at the meeting. Nonetheless, the parties do not dispute that the meeting was specifically called to address Lambey's allegations against Jefferson and that the meeting was called by DHHS employees. Therefore, given DHHS employees' knowledge of Lambey's allegations and their decision to discuss them in front of her co-workers, the Court concludes a material factual dispute exists regarding whether the meeting was called in retaliation against Lambey.

    The Court is less convinced DHHS retaliated against Lambey by transferring her to night shift employment because the evidence suggests Lambey requested this change. Nonetheless, because Lambey's retaliation claim survives DHHS' motion for summary judgment, Lambey is permitted to introduce whatever relevant evidence will help prove her case on this point.

**IV.     Negligent Supervision, Retention, and Infliction of Emotional Distress**

    Lambey alleges DHHS negligently supervised and retained the following employees: Jefferson, Clarke, Fetters, Thompson, Jordan, and Wynn. Lambey also brings a claim for negligent infliction of emotional distress against DHHS alleging that these employees' actions caused her severe emotional distress. An employer has a general duty to use reasonable care in the training, supervision, and retention of its employees to make sure that an employee is fit for his or her job. *Hall v. SSF, Inc.*, 930 P.3d 94, 99 (Nev. 1996). A claim for negligent supervision or

1  retention requires proof of a breach of duty of care in training or supervising an employee.
2  *Jepersen v. Harrah's Operating Co.*, 280 F. Supp. 2d 1189, 1194–95 (D. Nev. 2002).  In Nevada,
3  such a claim usually requires a showing that a third party was harmed by an employee and that the
4  injury would not have occurred had the employer exercised reasonable care in training or
5  supervising the employee.  *Id.*

6  The Court grants DHHS' motion for summary judgment on Lambey's negligence
7  claims because Lambey has brought forth no evidence to indicate that DHHS breached its duty of
8  care in training or supervising the individuals mentioned in the Complaint.  Lambey has done
9  nothing more than simply allege DHHS negligently trained its employees based on the fact that the
10 employees disclosed her allegations against Jefferson in an improper meeting.  The fact that an
11 employee violates an employer's rule, however, does not necessarily mean the employer is liable
12 for negligent supervision or retention, or for any resulting emotional distress under a theory of
13 negligence.  In order to survive a motion for summary judgment on these claims, Lambey must
14 bring forth admissible evidence indicating that DHHS breached its duty to properly train its
15 employees and that its breach of this duty directly caused her harm.  Lambey has failed to do this:
16 she has provided neither testimonial or documentary evidence to support any sort of negligence
17 claim against DHHS.  In coming to this conclusion, the Court also notes that counsel for Lambey
18 admitted in Lambey's Motion for Extension to File Amended Complaint that she did not have any
19 facts to support her claim for negligent supervision or retention. (Dkt. #28, Mot. 3.)  For each of
20 the above reasons, the Court grants DHHS' motion for summary judgment on Lambey's claims for
21 negligent supervision, negligent retention, and negligent infliction of emotional distress.

22 **V.    Slander**

23 Defamation occurs when a person publishes a false statement of fact. *Pegasus v.*
24 *Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002).  In order to establish a viable defamation
25 claim, a plaintiff must prove: (1) defendant made a false statement about him; (2) the statement
26 was published to a third party without privilege; (3) there was fault on the part of the defendant;

7

and (4) the statement was per se defamation or the defamation caused harm. *Lubin v. Kunin*, 17 P.3d 422, 425 (Nev. 2001).

The Court grants DHHS' motion for summary judgment because Lambey has neither produced evidence nor alleged facts sufficient to support a slander claim. Lambey has failed, both in her complaint and her opposition, to specifically identify the defamatory statement or the third-party to whom the statement was disclosed. Instead, Lambey simply alleges in conclusory fashion that DHHS "accused [her] of sexual misconduct with an inmate" and that this communication was "published to a third party." (Dkt. #4, Am. Compl. ¶ 30, 31.) Even if DHHS' vague assertion that she engaged in sexual misconduct is sufficiently detailed, Lambey has provided no evidence regarding who made the statement or when it was made. Furthermore, Lambey has failed to provide the identity of the third party to whom the statement was made. Because Lambey does not provide this necessary information, the Court grants DHHS' motion for summary judgment on her claim for slander.

## VI. Intentional Infliction of Emotional Distress

Lambey claims DHHS is liable for intentional infliction of emotional distress because its employees held a meeting against state policy and because they treated her poorly after the meeting. In order to state a claim for intentional infliction of emotional distress in Nevada, a plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing emotional distress or with reckless disregard for the plaintiff's emotional distress; (2) the plaintiff suffered severe or extreme emotional distress as a result; and (3) the defendant's actions were the proximate cause of plaintiff's emotional distress. *Jordan v. State*, 110 P.3d 30, 52 (Nev. 2005).

The Court grants DHHS' motion for summary judgment on Lambey's intentional infliction of emotional distress. The bar for intentional-infliction-of-emotional-distress claims is very high. *See Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). A person engages in extreme or outrageous conduct, and can therefore be liable for this tort, only when the person's

8

AO 72
(Rev. 8/82)

conduct is "outside all possible bounds of decency" such that it is "utterly intolerable in a civilized society." *Id.* Even if DHHS could be liable for its employees' allegedly poor behavior in this case, the Court concludes its employees' conduct does not constitute intentional infliction of emotional distress. Although DHHS employees did not handle Lambey's situation in accordance with state policies and they apparently mistreated her following the meeting, these errors are not outside the bounds of human decency or utterly intolerable in our society. Accordingly, the Court grants DHHS' motion for summary judgment on this claim.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant DHHS' Motion for Summary Judgment (#38) is GRANTED in part and DENIED in part as follows:

DHHS' Motion for Summary Judgment is DENIED as to Lambey's claims for harassment and retaliation under Title VII and GRANTED as to Lambey's claims for negligent supervision, negligent training, negligent infliction of emotional distress, slander, and intentional infliction of emotional distress.

Dated: April 7, 2010.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

9